UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA,              )
                                       )
                  Plaintiff,           )
                                       )
    VS.                                ) No. 2:25-CR-00003-Z-BR-(4)
                                       )
DAVID DEWAYNE KEELIN,                  )
                                       )
                  Defendant.           )
_____)

ELECTRONICALLY-RECORDED REARRAIGNMENT HEARING
BEFORE THE HONORABLE LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE
JULY 2, 2025
AMARILLO, TEXAS

FOR THE PLAINTIFF:

    JOSHUA J. FRAUSTO
    UNITED STATES ATTORNEY'S OFFICE
    500 South Taylor Street
    Amarillo, TX  79101
    (806) 324-2322

FOR THE DEFENDANT:

    ERIC COATS
    OFFICE OF FEDERAL PUBLIC DEFENDER
    500 South Taylor Street, Suite 110
    Amarillo, TX  79101
    (806) 324-2370

    Proceedings recorded electronically; transcript produced by computer-aided transcription.

_____

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
1100 Commerce Street, 15th Floor
Dallas, TX  75242
(214) 753-2325

(Proceedings commenced at 9:55 AM.)

THE COURT:  The Court calls Cause No. 2:25-CR-3-Z-BR-(4), *United States of America versus David Dewayne Keelin.*

MR. FRAUSTO:  The United States is present and ready, Your Honor.

MR. COATS:  Defendant is ready, Your Honor.

THE COURT:  Am I saying your last name correctly, --

THE DEFENDANT:  Yes, ma'am.

THE COURT:  -- "Keelin"?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  All right, very good.  I always have to ask because sometimes I am bad at names.

THE DEFENDANT:  That's okay.

THE COURT:  I need to read one thing for purposes of the record in your case as we get started.  After that, I'll administer the oath --

THE DEFENDANT:  Okay.

THE COURT:  -- to you and then start with all of the questions I have to ask.

Under Rule 5(f)(1) of the Federal Rules of Criminal Procedure, the United States and its counsel are ordered to comply with their disclosure obligations under the case that's known as *Brady versus Maryland*, 373 U.S. 83, and its progeny. The consequences of failing to do so could result in the

dismissal of charges, exclusion of evidence, adverse jury instructions, contempt proceedings, and other appropriate sanctions.

Could you raise your right hand?

Do you solemnly swear that the testimony you will give today will be the truth, the whole truth, and nothing but the truth, so help you God?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You may put your hand down, Mr. Keelin.

EXAMINATION BY THE COURT:

Q.   And are you "David Dewayne Keelin"?

A.   Yes, ma'am.

Q.   Do you intend to plead "guilty" today to Count Six of an Indictment that charges you with Possession with Intent to Distribute Methamphetamine?

A.   Yes, I am.

Q.   Before I can recommend to our District Judge -- he's the other judge in our building -- that he accepts the plea of "guilty" that you intend to enter, I have to ask a lot of questions.

A.   Okay.

Q.   There are two reasons that I have so many questions at a hearing like this one:

First, I need to make certain that you do understand all of the rights you're giving up by pleading "guilty";

Second, I will ask a set of questions towards the end of the hearing to make certain that we have facts in your case that will support a guilty plea.

Do you understand why I'll have so many questions?

A.    Yes, ma'am.

Q.    Some of my questions today will be long.

A.    Okay.

Q.    So if for that reason or any other reason you think that what I have asked is confusing, will you feel comfortable telling me that?

A.    Yes.

Q.    Do you understand that you do have the right to talk privately with your attorney at any point during your hearing?

A.    Yes, ma'am.

Q.    Can I assume then that you have understood the questions you have answered today unless you tell me I've asked you something confusing or that you want to talk to your attorney?

A.    Yes, ma'am.

Q.    Do you understand that towards the beginning of the hearing I did place you under oath which means if you were to answer any of these questions falsely, the Government could prosecute you for perjury or for making a false statement?

A.    Yes, ma'am.

Q.    I know I've said your name already, but for purposes of the record in your case, would you tell me your full name, please?

A.    David Dewayne Keelin.

Q.    Thank you.  How old are you, sir?

A.    56.

Q.    How far did you go in school?

A.    High school completed and some college and vocation.

Q.    Okay, very good.  In the last 12 months have you been treated for any kind of mental illness?

A.    No, ma'am.

Q.    In the last 12 months have you been treated for an addiction to any kind of narcotic drugs?

A.    No, ma'am.

Q.    Today are you under the influence of any drug, alcoholic beverage, or medication?

A.    No, ma'am.

Q.    While you have been at the Randall County Jail, have you been taking any type of medicine on a regular or a daily basis?

A.    Yes, ma'am.

Q.    All right.  Can you either tell me what those medications are or -- Sometimes it's easier for people just to tell me what they are taking them for.  Either is fine.

A.    Okay.  To the best of my knowledge, it's Lisinopril which is for high blood pressure --

Q.    Okay.

A.    -- and some diuretic.

Q.    Anything else besides the high blood pressure and the

diuretic?

A.   No, ma'am.

Q.   All right.  Thank you.

In the time you have been taking those two medications, have they ever caused you to not understand what's happening around you?

A.   No, ma'am.

Q.   Can you think of any reason then why you being on those two medications would cause you to not understand what's going to happen in court?

A.   No, ma'am.

Q.   One of the things that we will do during the hearing is to talk about the different documents you signed to get ready to come to court.  I can see those are all on the table in front of you.  And if you want to read any of those again during the hearing, that is perfectly fine.

The document I want to visit with you about first is the one-page document that has to do with your consent or agreement for me to be the judge that hears the guilty plea.  I know you signed that.  However, for purposes of the record in your case, I do need to give you an explanation about the document.

A.   Okay.

Q.   Then I'll ask a few questions.

What the consent document does is explain that you do have a choice as far as which of the two judges in our building hears

your guilty plea. You have the right to have the other judge, the District Judge, hear your guilty plea or you can agree to have me, as the United States Magistrate Judge, hear the plea this morning, knowing that when it is over, I will make a recommendation to the District Judge that he either accepts or rejects the plea.

Before you signed the consent document, did you have a chance to talk with your attorney about which of the two judges would hear the guilty plea in your case?

A.   Yes.

Q.   Okay.  Do you have any questions about that topic today?

A.   No, ma'am.

Q.   Is it okay with you then if we go forward with your hearing with me being the judge who conducts the hearing, knowing at the end of it I will make a recommendation to the District Judge about the plea?

A.   Yes, ma'am.

THE COURT:  I find that the consent has been knowingly and voluntarily given, and we will proceed forward.

Q   (By The Court) Have you previously been given a copy of the Indictment in your case?

A.   Yes, I have.

Q.   Did you have a chance to read that document yourself?

A.   Yes.

Q.   Did you also have the chance to talk to your attorney not

only about the charges in the Indictment but also about your entire case?

A.   Yes.

Q.   At this point then, Mr. Keelin, you have a choice to make. We can have the Government's attorney read Count Six of the Indictment out loud, if you would like to hear it, or you could waive the reading of that.  In other words, give up the reading of it in court.

A.   Yeah.  I'll -- I'll waive it.  Waive it.

Q.   Very good.

     There is something related to Count Six of the Indictment, though, that does need to still be read.

A.   Okay.

Q.   That is what we call the "essential elements" of this offense.  Those are the facts that would have to be proven during any jury trial with competent evidence and beyond a reasonable doubt before you could be found "guilty."  These elements that will be read were listed out within the Factual Resume in your case.  After those are read, I'll ask if you understand.

     MR. FRAUSTO:  To prove the offense alleged in Count Six of the Indictment, the following elements must be proved beyond a reasonable doubt:

     First, that the Defendant knowingly possessed a controlled substance;

     Second, that the substance was, in fact,

methamphetamine; and

Third, that the Defendant possessed the substance with the intent to distribute it.

Q    (By The Court) Having heard those essential elements being read out loud, do you understand the nature of the offense you intend to plead "guilty" to?

A.    Yes, ma'am.

THE COURT:  Counsel, are you satisfied your client understands the nature of the offense?

MR. COATS:  I am, Your Honor.

THE COURT:  I find that Mr. Keelin does understand the nature of this offense charged in Count Six of the Indictment to which he intends to plead "guilty."

Q    (By The Court) Sir, are you fully satisfied with your attorney and the representation and advice you've received in the case?

A.    Yes.

Q.    Next, I need to talk with you about the Plea Agreements in your case.  We can have those documents read out loud, if you would like, or you also can waive the reading of those in court.

What do you prefer?

A.    I'll waive the reading.

THE COURT:  Counsel, do you join in that waiver?

MR. COATS:  I do, Your Honor.

Q    (By The Court) At any time in the past, sir, did you have

the opportunity to fully read both of those Plea Agreements?

A.   Yes, ma'am.

Q.   Did you also have the chance to talk with your attorney about everything in these two agreements?

A.   I believe so, yes.

Q.   Do you think that you understand all of the terms that are in these agreements between you and the Government?

A.   I believe so, yes.

THE COURT:  Counsel, are you satisfied that your client does understand his agreements after your conversations with him?

MR. COATS:  I am, Your Honor.

Q   (By The Court) Mr. Keelin, do you have any changes or corrections to make to your Plea Agreements?

A.   No.

THE COURT:  Counsel, would you have any to make?

MR. COATS:  No, Your Honor.

Q   (By The Court) All right.  I am looking at the signature pages on each of these Plea Agreements, sir.  it appears that you did sign both of those late last month.  Is that correct?

A.   That's correct.

THE COURT:  Counsel, did you sign both, also?

MR. COATS:  I did, Your Honor.

Q.   (By The Court) These documents that you and I have just been talking about, sir, do have different promises or agreements in them between you and the Government about various things in your

case.  Those promises and agreements are written down within what you have signed.  What I'm going to ask next relates to something a little different than that idea.

Are there any other promises or agreements in your case that you're relying on in order to plead "guilty" but that are not written down within these signed documents?

A.    No, ma'am.

Q.    Has anyone threatened you or forced you in any way to plead "guilty" in the case?

A.    No, ma'am.

Q.    Are you pleading "guilty" voluntarily and of your own free will because you are guilty?

A.    I am.

Q.    By pleading "guilty" to a felony offense, Mr. Keelin, if the District Judge accepts your plea, you would then be adjudged guilty.  A judgment of guilt in this case can deprive you of valuable rights that you have as a citizen.  Stated differently, if you're found guilty, you may not be able to vote, to hold public office, to serve on a jury, or to possess any kind of a firearm.

Do you understand?

A.    I do.

Q.    Do you understand that under the Constitution and laws of the United States, you do have the right to plead "not guilty" and then you could go to trial in front of a jury on these

charges in the Indictment that relate to you?

A.    Yes, ma'am.

Q.    Do you understand that at any trial, as well as the other parts of your case, you are entitled to have your lawyer there helping you at each and every step?

A.    Yes.

Q.    Are you aware that during any trial you would be presumed innocent and it would be the Government who would have the burden to prove you guilty with competent evidence and beyond a reasonable doubt?

A.    Yes.

Q.    Do you understand that during any trial the Government would have to bring its witnesses into the courthouse?

They would all testify in front of you.  That way, you could see and hear what they were saying, and then your attorney also could ask some questions.

A.    Yes.

Q.    Do you understand that during trial you would have the right to testify and present evidence in your own defense, if you wanted to do that voluntarily, but that you could never be forced to testify against yourself?

A.    Yes.

Q.    Do you understand that if you decided not to testify or present any evidence in your own defense, those facts could not be used against you at the trial?

A.    Yes.

Q.    Are you aware that your lawyer would have the ability to issue legal documents that are called "subpoenas" that would require witnesses who were favorable to your side of the case to come into the courthouse and then those witnesses could testify on your behalf?

A.    Yes.

Q.    Do you understand that if you do plead "guilty" this morning and the District Judge then accepts the plea, you will have given up your right to have a trial in front of a jury as well as these other rights I have just described?

A.    I do.

Q.    Do you understand also that by pleading "guilty" today, you do give up that right not to testify against yourself?

And that is because I will ask questions during the hearing to establish that you are guilty and as part of the hearing you would admit your guilt.

A.    Yes.

Q.    At this point in your hearing, Mr. Keelin, I need to make certain you understand what the possible penalties and consequences are if there's a conviction --

A.    Yes.

Q.    -- on this offense --

A.    Yes, ma'am.

Q.    -- in Count Six.  These were listed out in Paragraph 3 of

your Plea Agreement.  However, the Government's attorney will read those out loud for us.  After that's done, I'll ask if you understand.

A.   Okay.

MR. FRAUSTO:  The maximum penalties the Court can impose include the following:

Imprisonment for a period not to exceed 20 years;

A fine not to exceed one million dollars or twice any pecuniary gain to the Defendant or loss to the victims;

A term of supervised release of not less than three years, nor more than life, which is mandatory under the law and will follow any term of imprisonment.  If the Defendant violates the conditions of supervised release, the Defendant could be imprisoned for the entire term of supervised release;

A Mandatory Special Assessment of $100;

Restitution to victims or to the community which may be mandatory under the law and which the Defendant agrees may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone;

Costs of incarceration and supervision; and

Forfeiture of property.

Q    (By The Court) Having heard all of those possible penalties and consequences being read out loud, do you understand each of those?

A.   Yes.

Q.   As that was read, there was a phrase that was used called "supervised release" that is particular to the federal courts.  I want to explain a couple of things about that --

A.   Okay.

Q.   -- to you.

First, "supervised release" is a time period that would follow your release from any term of imprisonment you may receive in your case.  While you are on supervised release, the District Judge will have given you a set of terms and conditions you have to follow.  In other words, he will give you rules about what you can do and what you can't do after being released from any possible prison sentence.

Second, if you don't follow those terms and conditions, in other words, if you break the rules, your release could be revoked which means you can go back to prison without receiving credit for the time you already had spent out of prison and following the rules up until that time.

Do you understand all of that?

A.   Yes.

Q.   Has anyone made a promise to you as to exactly what your sentence in the case will be?

A.   No.

Q.   Do you understand it is the District Judge and only the District Judge who decides your sentence?

A.   Yes.

Q.    In deciding a sentence for your case, the District Judge is required to consider what are called the *"United States Sentencing Guidelines"* as well as that punishment range within the *Guidelines*.  However, neither of those things is binding on him.

Do you understand?

A.    Yes.

Q.    Additionally, our laws require that any sentence the District Judge decides on does six different things:

Reflects the seriousness of the offense;

Promotes respect for the law;

Provides just punishment;

Affords adequate deterrence for future crime;

Protects the public; and then finally,

Provides you with any needed educational or vocational training, medical care, or other correctional treatment.

Do you understand?

A.    Yes.

Q.    Have you and your attorney talked about how these *Sentencing Guidelines* might possibly apply in your case?

A.    Yes.  I'd like to speak to him just a little bit further about that, if that's possible.

Q.    Absolutely.  Take as much time as you need, sir.  Okay.

(Defendant consulting with his attorney privately.)

MR. COATS:  Thank you, Your Honor.

THE DEFENDANT:  Thank you.

Q    (By The Court) And did you have enough time to talk to your attorney, Mr. Keelin?

A.    Yes, ma'am.

Q.    All right.  It is those *Sentencing Guidelines* that you and your attorney have talked about that provide.  The District Judge also considers some other factors as he is deciding a sentence.  Those are:

The actual conduct in which you engaged;

To consider if there is a victim of the offense;

The role that you played; and

Then whether you have accepted responsibility for your relevant conduct or have attempted to obstruct justice.

Do you understand?

A.    Yes.

Q.    Are you aware that your criminal history is an important factor under the *Sentencing Guidelines*?

A.    I am.

Q.    When you and your attorney talked about the *Sentencing Guidelines* and how they might apply in your case, did he give you an opinion as to what he thought a sentencing guideline range might be if you went to trial in front of a jury on all these charges in the Indictment that relate to you versus if you accepted this plea offer from the Government only to Count Six?

A.    Yes, he did.

Q.    Okay.  Do you understand that when he gave you that opinion as to how these guideline ranges might work out, that he still can't promise you that opinion is correct?

A.    Yes, he did.

Q.    Are you aware the reason that he cannot make promises about the *Sentencing Guidelines* for your case is because the District Judge will always have the ability to do something different with your sentence than what your attorney's opinion is?

A.    Yes.

Q.    Neither our District Judge, nor your attorney can determine exactly what that sentencing guideline range in your case will be until after a probation officer writes what is called the "Presentence Report."  Sometimes that's called the "PSR."  After that report is written, then both you and the Government will have a chance to review the PSR and also to object to the facts in it as well as the recommended guideline range in it.

      Do you understand that process?

A.    Yes.

Q.    Do you understand that no one, not even your lawyer, can predict ahead of time what your sentence will be in the case?

A.    Yes.

Q.    Do you understand that after it is decided what the sentencing guideline range is for your case, our District Judge will still have the authority to decide on a sentence that is more severe than what is called for under the *Guidelines*?

A.   Yes.

Q.   Let me check something real quick.  This is within Paragraph 14 of your Plea Agreement where you have given up your right to an appeal except in the circumstances that were listed out within that paragraph.

A.   Yes.

Q.   All right.  Parole for this offense to which you intend to plead "guilty" has been eliminated within the federal courts. That means if you are sentenced to prison in your case, when you're released, it can't be to parole.  Instead, you're placed under the terms of supervised release.

Do you understand?

A.   Yes.

Q.   Do you understand that if the sentence our District Judge decides on for your case happens to be more severe than what you have expected it to be, you would still be bound by a guilty plea today and you would not have the right to withdraw that plea?

A.   It will not exceed the 20 years, correct?

Q.   That is correct.

A.   Yes.  Yes.

Q.   In just a moment, I am going to ask how you plead in the case, sir.  Before I ask that question, though, is there anything else you want to talk to your attorney about?

A.   No.

Q.   Having been informed of your rights and the possible

consequences of pleading "guilty," how do you plead to Count Six of the Indictment?

A.   I plead "guilty."

Q.   Before I can recommend to the District Judge that he accepts the plea of "guilty" you just entered, I do need to ask that second set of questions I mentioned at the very beginning, the ones to make certain that we have facts in your case that support the guilty plea you entered.

In that regard, we can have the Government's attorney read your Factual Resume out loud or you also can waive the reading of that document.

What do you prefer?

A.   I'll waive -- I'll waive the reading.

THE COURT:  Counsel, do you join in that waiver?

MR. COATS:  I do, Your Honor.

Q    (By The Court) At any time in the past, Mr. Keelin, did you have the chance to completely read that Factual Resume?

A.   Yes, ma'am.

Q.   Did you also talk to your attorney about it?

A.   Yes, ma'am.

Q.   Do you understand everything that is in the resume?

A.   I do.

Q.   Do you have any changes or corrections to make to that document?

A.   No, ma'am.

THE COURT:  Counsel, would you have any to make?

MR. COATS:  No, Your Honor.

Q    (By The Court) I'm looking at this signature page, also, sir.  It appears you signed your Factual Resume as well.  Is that correct?

A.    Yes.

THE COURT:  Counsel, did you sign that document?

MR. COATS:  I did, Your Honor.

Q    (By The Court) Mr. Keelin, do you admit under oath that this Factual Resume in your case is true and correct in every respect?

A.    It is.

Q.    Do you also admit under oath that you committed each of the essential elements of this offense charged by Count Six of the Indictment?

A.    Yes.

THE COURT:  Being satisfied with the responses that have been given during the hearing, I make the following finding on the record:

In the case of the *United States of America versus David Dewayne Keelin*, Cause No. 2:25-CR-3-Z-BR-(4), I find that Mr. Keelin is fully competent and capable of entering an informed plea.  His plea of "guilty" to Count Six of the Indictment is a knowing and voluntary plea that is supported by an independent basis in fact that contains each of the essential elements of this offense charged in Count Six of the Indictment.

The Court is recommending his plea of "guilty" be accepted by our District Judge.  And if it is, he then will be adjudged guilty of the offense charged by Count Six of the Indictment.

As we start to wrap up the hearing, I want to explain three things to you as far as what you can expect will happen after court is over today.

The very first thing that will happen is I will sign a document today called "Report and Recommendation Concerning Guilty Plea."  That report is how I communicate to the other judge to tell him that we had a hearing where you pled "guilty" and also that I'm recommending that he accepts that guilty plea. You will have 14 days after today to make any kind of objection that you would want to make to the fact I'm recommending he accepts the "guilty" plea.

The second thing that will happen is the District Judge will enter his own Order in the next few days that sets out the schedule for everything that happens after today.  That new Scheduling Order will give you the date that sentencing takes place in your case which normally is within a few months after today.

During sentencing, the District Judge will hear from you, your attorney, then usually up to three witnesses on your behalf.  You also can have people write letters to him, if you want, that talk about you.  Your attorney can help with

coordinating that.  And as long as those kinds of letters are received on time, he'll read those before the Sentencing Hearing.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Finally, there will be a probation officer who writes that Presentence Report or PSR I mentioned during one of my questions.  That report is written in order to help the District Judge make his decision about the appropriate sentence for the case.  For that reason then, it is important to you that you cooperate with all the aspects of the report.  You may be asked to meet with the probation officer who is writing the report to help get some information gathered to put into it.  If there is a meeting like that, your attorney can be there with you.

THE DEFENDANT:  Okay.

THE COURT:  Another reason it is important for you to cooperate with respect to that PSR is because the probation officer who writes it has the ability to recommend to the Judge that there's a decrease in your offense level for what is called "acceptance of responsibility."  Then finally, the whole report that is being put together is what helps everyone to calculate the sentencing guideline range in your case.

THE DEFENDANT:  Yes.

THE COURT:  You told me at the beginning of the hearing that while you have been at Randall County, you've been taking some high blood pressure medication as well as a diuretic.  You

also said that those never caused you any confusion, so you didn't anticipate being confused or not understanding what we would do in court.  However, now that I'm done with all of my questions, I have to go back and ask you that again to see if you did understand.

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Is there anything you can think of, sir, about the fact that you've been on those two medications that makes you think you did not understand what we did?

THE DEFENDANT:  I do not.

THE COURT:  All right.  In other words, you could understand everything I asked you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Thank you so much, Mr. Keelin. That is everything for your case this morning, and good luck as you start into this last phase of it, sir.

THE DEFENDANT:  Thank you.

(Hearing adjourned at 10:22 AM.)

CERTIFICATE OF OFFICIAL REPORTER

I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Texas, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the electronically-recorded proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 3rd day of December, 2025.


/s/ Deborah A. Kriegshauser
_____
DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER